# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES R. COLVIN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. SA-17-CV-974-XR |
| | § | |
| 88 BOARD, THE JOINT BOARD OF | § | |
| TRUSTEES FOR THE 88 PLAN, | § | |
| | § | |
| *Defendant.* | § | |

**ORDER**

On this date, the Court considered Plaintiff's Motion to Supplement the Administrative Record (docket no. 23) and Defendant's Motion for Protective Order (docket no. 28). Because the Court grants Plaintiff's motion to supplement the administrative record with materials that were not considered by the 88 Plan Board, the Court finds that remand is appropriate. The motion for protective order is therefore dismissed as moot.

**Background**

The National Football League Players Association and the National Football League Management Council created the 88 Plan, which is an ERISA plan that provides benefits to eligible former NFL players who have dementia, amyotrophic lateral sclerosis, or Parkinson's disease. The 88 Plan provides that dementia excludes substance-induced persisting dementia. To receive reimbursement from the Plan, a player must first apply to become an "88 Eligible Player." Initial applications are reviewed by the 88 Committee, and denials may be appealed to the 88 Board, which conducts a de novo review and then issues a final determination.

1

Plaintiff James R. Colvin played football for the NFL from 1960 to 1967. Plaintiff asserts that the traumatic injuries he received from playing football have manifested into neurological and physical disabilities, including the onset of dementia. He applied for benefits initially in 2013, asserting dementia as a basis for eligibility. His treating physician, Dr. R. Braden Neiman, completed part of the application (as required), noting that a 2012 PET scan "showed early dementia and Alzheimer's disease." Dr. Neiman also provided records in support of the application, and a July 5, 2012 record stated that the PET scan showed "some changes that could be consistent with a dementia process" but it "was still indeterminate" and "they recommended follow-up in six months to a year." The Committee denied the application on the basis that the record did not show that Colvin had been diagnosed with dementia, ALS or Parkinson's, and informed Plaintiff by letter on April 3, 2013.

In February 2015, Plaintiff filed an application with the Bert Bell/Pete Rozelle NFL Player Retirement Plan for total and permanent disability benefits and/or the 88 Plan for dementia benefits. He was asked to submit an application with the appropriate section completed by Plaintiff's treating physician, and he did so on May 5, 2015. Dr. Neiman checked the box "yes" for the question "Does Player have Dementia as defined in the Diagnostic and Statistical Manual of Mental Disorders (4th E., Text Revision)?" He checked "no" for the question "Is (1) Substance-Induced Persisting Dementia or (2) Dementia Due to Multiple Etiologies where Substance-Induced Persisting Dementia is the primary cause?"

The Plan informed Plaintiff in June 2015 that medical reports from the physician documenting and/or providing a basis for the dementia diagnosis were missing from the application such that it was incomplete. Medical records were submitted on June 16, 2015.

The Committee denied the application in July 2015. The denial letter states that the application indicates that Colvin may be eligible for benefits due to a diagnosis of dementia but the medical records "do not show that you have been diagnosed with Dementia by a physician with experience in the field of treating Dementia."

Colvin appealed in December 2015 and submitted additional records, including those related to an evaluation by Dr. Neiman on December 7, 2015 and a referral to Dr. Douglas Cooper with South Texas Neuropsychology. The 88 Board referred Colvin for an evaluation with a Plan neurologist, Dr. Eric Brahin, for a dementia evaluation in June 2016. Dr. Brahin noted that Plaintiff had been drinking since age 12 and would drink 2-4 "big drinks" per night, each containing 2-3 shots of alcohol per night. Dr. Brahin concluded that Colvin had a substance abuse problem with alcohol and that he was "unable to properly determine whether or not [Plaintiff] suffers from dementia due to his alcohol abuse." However, Dr. Brahin also noted additional facts that he felt made a diagnosis of dementia unlikely, such as the fact that Colvin lives independently.

The 88 Plan Board denied the appeal on August 17, 2016. The denial letter was sent on August 26, 2016. It explained that the Board denied benefits for two reasons: (1) based on the medical reports, the Board found that Plaintiff did not have dementia; and (2) even if he did have dementia, his alcohol abuse precludes a finding that he is an 88 Eligible Player because substance abuse dementia is excluded from the plan and Dr. Brahin found that Plaintiff's alcohol abuse interfered with a reliable diagnosis of dementia. The letter informed Plaintiff that he "should regard this letter as a final decision on review within the meaning of Section 503 of the Employee Retirement Income Security Act of 1974, as amended, and the

3

regulations issued thereunder by the Department of Labor." It further informed him of his right to bring an action under ERISA.

Apparently before receiving that letter, Plaintiff's attorney sent Defendant a letter on August 29, 2016 objecting to Dr. Brahin's report based on asserted factual errors and attaching an August 23, 2016 report from Dr. Neiman rebutting Dr. Brahin's statements and conclusions. Plaintiff's counsel noted that Dr. Neiman questioned whether Dr. Brahin's report was actually about Plaintiff or was confused with another patient given its "many factual errors." Counsel asked that Dr. Brahin's report be disregarded or, if considered by the appeals Board, that Dr. Neiman's report also be considered in rebuttal.

Dr. Neiman's August 23 report stated that Plaintiff had no indications of alcohol abuse and that Dr. Neiman was confident that Plaintiff has Alzheimer's. Dr. Neiman stated that, in all the years he had known Plaintiff, he had never reported an alcohol history substantial to the one that Dr. Brahin listed, nor had there been evidence of it. Dr. Neiman also noted that Dr. Brahin conducted only a short meeting with Plaintiff and conducted the Montreal Cognitive Assessment, which is a quick, mini-assessment for screening and not a diagnostic tool. He also rebutted Dr. Brahin's conclusion that someone with dementia could not live alone as Plaintiff did, noting that Plaintiff could live alone "at his level, especially given that he has close family support." He concluded by stating that, "full neurological work-up has revealed changes consistent with Alzheimer's disease and I am confident with my diagnosis. There is no evidence of alcohol abuse to question Jim's diagnosis, and in speaking with Jim, he disputes the statements made by Dr. Brahin regarding his alcohol use."

On September 27, 2016, Plaintiff's attorney sent a second letter refuting Dr. Brahin's report and emphasizing Dr. Neiman's letter and asking for reconsideration. The letter states that Dr. Brahin's report was not timely provided to Colvin and, had it been, he could have provided Dr. Neiman's rebuttal report for review at the August 17, 2016 meeting of the 88 Board. The letter also states that both Colvin and his son (who was present at Dr. Brahin's evaluation of Colvin) deny the statements that Dr. Brahin reported about Colvin's drinking habits. On October 19, 2016, counsel for the 88 Plan responded to the August 29 and September 27 letters, informing them that the letters were being forwarded to Dr. Brahin and asking him to respond. The letter said, "When we have Dr. Brahin's reply, we will share it and discuss with you the appropriate next steps, if any."

On November 3, 2016, Dr. Brahin issued a second opinion regarding Colvin. Dr. Brahin stood by his statement that Colvin admitted to two to four "big drinks" per day with two to three shots of alcohol in each drink and criticized Dr. Neiman for not fully exploring Colvin's alcohol use. Defendant's counsel forwarded Dr. Brahin's rebuttal to Plaintiff's former counsel on November 8, stating "I enclose for your review a November 3, 2016 letter from Dr. Brahin, which addresses the issues you raised concerning Dr. Brahin's evaluation of Mr. Colvin. As you can see, Dr. Brahin stands by his report. If you have any questions or concerns, please let me know. Otherwise, I will consider the matter closed."

On March 31, 2017, Plaintiff's attorney sent Defendant a letter outlining Plaintiff's position and attaching additional documentation, including a March 14, 2017 report from Dr. Neiman. The report stated that Colvin's initial neurological work-up revealed some changes consistent with a dementia process but was still indeterminate, but he had continued to have

5

progression of memory changes and a full neurological work-up was repeated, including a brain MRI and PET scan, "which revealed changes consistent with progression of hippocampal atrophy and posterior hypometabolism consistent with Alzheimer's disease." It further stated that there was no evidence of alcoholism as suggested by Dr. Brahin and that he disagreed with Dr. Brahin's evaluation.

On April 13, 2017, counsel for the Board responded, stating that the August 2016 decision was "a final decision that is not subject to further administrative review" and that Plaintiff could bring suit under ERISA if he would like to challenge the decision or could file a new application. Colvin filed this lawsuit on October 2, 2017. Colvin brings this ERISA suit on the basis that he is an eligible former NFL Player entitled to receive 88 Plan benefits and Defendant wrongfully denied those benefits in violation of the plan provisions and ERISA.

**Applicable Law**

ERISA provides the federal courts with jurisdiction to review determinations made by certain benefit plans. 29 U.S.C. § 1132(a)(1)(B). When assessing factual questions, the district court is constrained to the evidence before the plan administrator. *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999). The plan administrator has the obligation to identify the evidence in the administrative record and the claimant must be afforded a reasonable opportunity to contest whether that record is complete. *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000). "Once the administrative record has been determined, the district court may not stray from it but for limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in

other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim." *Id.*

In *Vega*, the Fifth Circuit held that "the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Vega*, 188 F.3d at 300. Relying on *Vega*, Plaintiff moves to include in the administrative record certain materials provided by Plaintiff to the Board after its decision but with sufficient time for the Board to consider it before Plaintiff filed suit in October 2017. The Board opposes inclusion of the materials, asserting that the administrative record should only include documents considered up to the August 2016 final decision. Relatedly, Plaintiff seeks to conduct certain discovery, and the Board has moved for a protective order to quash three deposition notices.

**Analysis**

In December 2017, the Board produced the Administrative Record, a 200-page compilation of documents that included "the evidence before the 88 Board at the time of its August 17, 2016 decision on Plaintiff's application to become an 88 Eligible Player." Docket no. 28-1 at 6. Colvin seeks to include in the administrative record the three letters sent by Plaintiff's counsel on 8/29/16 (Ex. B), 9/27/16 (Ex. C), and 3/31/17 (Ex. D) to the Board, and "documents created by Defendant or others acting on behalf of Defendant" that "were available to Defendant prior to Mr. Colvin filing his lawsuit" including: the 88 Plan Playbook (Ex. E); the 88 Plan Summary of Material Modifications (Ex. F); and the November 3, 2016 opinion letter from Dr. Brahin (Ex. G).

7

Defendant does not object to the inclusion of Ex. E (the 88 Plan Playbook) and Ex. F (88 Plan Summary of Material Modifications) but does object to the other exhibits because they were not before the 88 Plan administrator at the time of its final decision on August 17, 2016 and the administrator did not have a fair opportunity to consider them thereafter. Docket no. 27 at 1. Defendant further requests that, if the Court grants the motion to include these documents, it remand to the plan administrator for further consideration because this Court should not decide the merits by considering evidence not considered by the plan administrator. Docket no. 27 at 8.

Defendant contends that the language in *Vega* is dictum and "is impossible to understand and difficult to apply." Docket no. 27 at 6. It notes that a later Fifth Circuit panel observed that it "conflict[s] with prior cases in which [the Fifth Circuit] indicated that the administrative record consisted of those documents before the administrator at the time the claims decision was made" and that it "poses a number of practical problems." Docket no. 27 at 6 (quoting *Keele v. JP Morgan Chase Long Term Disability Plan*, 221 F. App'x 316, 320 (5th Cir. 2007)). Defendant notes that "district courts have echoed these legitimate concerns." Docket no. 27 at 6. Defendant further argues that *Vega* does not control here because it involved a plan that was administered by a full-time, professional administrator, whereas this plan is administered by a Taft-Hartley board of trustees that meets on a quarterly basis. Before each meeting, plan staff gather and prepare application-related material for presentation and review by the Board, and no materials were prepared for or presented to the Board after August 17, 2016 in this matter. Thus, Defendant contends, even under the logic of *Vega*, the 88 Board did not have a fair opportunity to consider the evidence that Plaintiff submitted.

Defendant states it is unaware of any case applying *Vega* in the context of a Taft-Hartley plan administered like the 88 Plan, and Plaintiff has cited none. Plaintiff responds that "the only reason the proposed supplemental documents were not before Defendant is because Defendant's representatives were intentionally not presenting them to Defendant for their consideration." Docket no. 29 at 3.

In *Vega*, the *en banc* court considered what evidence becomes part of the administrative record. *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999). It emphasized the "motivating concern" that the rules encourage the parties to resolve their dispute at the administrator's level and not circumvent the administrator's review of claims. *Id.* at 300. It further held that "the administrative record consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Id.* Specifically, it noted that the bar to a party's seeking to introduce evidence into the administrative record was not "particularly high" and that, "if the claimant submits additional information to the administrator . . and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record." *Id.*; *see also id.* ("Before filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it."). Although this language was subsequently affirmed in *Estate of Bratton v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 215 F.3d 516, 521 & n.5 (5th Cir.

2000), Defendant is correct that subsequent decisions in the Fifth Circuit courts have noted concern over this holding.[1]

The Fifth Circuit acknowledged in *Keele v. JP Morgan Chase Long Term Disability Plan*, 221 F. App'x 316, 32-21 (5th Cir. 2007) that *Vega* appeared to conflict with prior cases indicating that the record was only those documents before the administrator at the time the claims decision was made, and also noted that it could cause practical problems in terms of setting standards for when the administrator could close a matter. But it did not decide the question because the later information did not change the outcome.

*Keele* was unpublished, and later that same year the Fifth Circuit issued *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389 (5th Cir. 2007), in which it held that affidavits from the plaintiff and doctors mailed seven months after Liberty issued a final denial letter were correctly determined to be part of the administrative record because they were submitted over a year before the plaintiff filed the lawsuit, thereby giving Liberty a fair opportunity to consider them. *Id.* at 398 n.12.

In *Anderson v. Cytec Industries, Inc.*, 619 F.3d 505, 516 (5th Cir. 2010), the Fifth Circuit noted that "subsequent panels of this court and several district courts within this circuit have wrestled with [the] language from *Vega*, which could be read to allow claimants to add material to the administrative record long after exhausting their final administrative appeal, even without a showing that the evidence was unavailable to them while their administrative appeal was pending or that they made a good-faith effort to discover or submit the information during the administrative process." It noted that this would "make this circuit's administrative

---

[1] In addition, the Seventh Circuit has called *Vega* an "outlier" that does not rest on firm ground. *Majeski v. Met Life*, 590 F.3d 478 (7th Cir. 2009).

record law more expansive than that of the rest of the circuits." *Id.* at 516 n.9.[2] It did not resolve the problem or directly confront *Vega*, however, because it held that the defendant did not abuse its discretion even considering the extended administrative record. *Id.* at 511 n.5; *see also McCorkle v. Met. Life Ins. Co.*, 757 F.3d 452, 458 n.18 (5th Cir. 2014) (again noting the *Vega* language and stating "we may sidestep any 'thorny timing issues posed by *Vega*' when the additional information is 'cumulative' or 'irrelevant'").

In *Killen v. Reliance Standard Lift Ins. Co.*, 776 F.3d 303 (5th Cir. 2015), the Court cited *Vega* and noted that a "fair opportunity" must come in time for the administrator to reconsider his decision. Where the file was already closed and the plaintiff had exhausted two internal appeals, submission of evidence four weeks before filing suit did not give a fair opportunity. But the Court also concluded that the new evidence would not change the outcome.

Despite certain language questioning it in later opinions, *Vega* is an *en banc* opinion that has not been overruled. *Vega* and *Corry* strongly support Plaintiff's motion to include the letters sent by Plaintiff's counsel, which included Dr. Neiman's rebuttal to Dr. Brahin's letter, to the Plan in August 2016, September 2016, and March 2017 and the second opinion letter from Dr. Brahin. The goal in *Vega* was to encourage the parties to consider *all* the evidence before filing the lawsuit. Plaintiff's attempt to rebut Dr. Brahin's report is consistent with this goal. Colvin was first made aware of Dr. Brahin's opinion that Colvin suffered from a substance-abuse problem and did not appear to have dementia when he received the report, and Colvin quickly responded with a rebuttal letter from Dr. Neiman, not realizing that the

---

[2] Some litigants have argued, however, that *Vega* prevents a self-interested administrator from manipulating the process unfairly by closing the record prematurely and excluding information that would weigh in favor of the claimant. *Corbello v. Sedgwick Claims Mgmt. Servs., Inc.*, 856 F. Supp. 2d 868, 887 (N.D. Tex. 2012).

11

Board had already reached a decision. This rebuttal was not something that Colvin was aware that he needed to include before that time.

Moreover, although the 88 Board may not have considered the evidence because it was not presented at a quarterly meeting, *Vega* permits inclusion in the record all "relevant information *made available* to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator fair opportunity to consider it." *Vega*, 188 F.3d at 300; *see also Atkins v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, No. A-10-CA-515-SS, 2011 WL 13269723, at *3 (W.D. Tex. Aug. 8, 2011) ("There is clearly no standard that an administrative record only include documents 'presented to,' as opposed to 'made available' to the fiduciary."). The Board met again in November 2016, and in February and May 2017, long before suit was filed. All of the policy and technical requirements justifying the rule in *Vega* are satisfied here. Thus, the Court concludes that Exhibits B, C, D, and G must be considered part of the administrative record, as well as Ex. E and Ex. F, which are unobjected to.

Defendant has asked that, if the Court requires the supplemental exhibits to be included in the record, it remand rather than determine the merits of this case. The "job of weighing valid, conflicting professional medical opinions is not the job of the courts" but of "the administrators of ERISA plans." *Corry*, 499 F.3d at 401; *see also McDonald v. Hartford Life Group Ins. Co.*, 361 F. App'x 599, 612 (5th Cir. 2010). Although the Board may choose between competing medical opinions, according to Defendant, the Board did not review or evaluate Dr. Neiman's letters disputing Dr. Brahin's conclusions regarding substance abuse and dementia. It would be improper for this Court to evaluate the information without the plan administrator first having the opportunity to do so.

In *Hartwell v. U.S. Foodservice*, No. 3:09-cv-00260-DPJ-FKB, 2010 WL 3713496 (S.D. Miss. Sept. 13, 2010), the district court noted that if new information was presented, then remand would be consistent with *Vega*'s policy of encouraging resolution at the administrative level. It further noted that "[h]istorically, the Fifth Circuit has sanctioned remand for review of evidence or issues that the plan administrator failed to consider" and thus it remanded with instructions for the plan administrator to consider the new evidence. *Id.* at *9. Similarly, Defendant cites *Abate v. Hartford*, 471 F. Supp. 2d 724 (E.D. Tex. 2006), in which the court allowed the claimant to supplement the administrative record with relevant materials and remanded because the administrator's decision was based on an incomplete record and overlooked pertinent information. The Court finds that remand is appropriate here.

## Conclusion

Plaintiff's Motion to Supplement the Administrative Record (docket no. 23) is GRANTED. Further, the case is REMANDED to the plan administrator to consider the supplemental evidence. Defendant's motion for protective order (docket no. 28) is DISMISSED AS MOOT. The Clerk shall administratively close this case. Either party may move to reopen this case after the administrator's final decision following further review.

It is so ORDERED.

SIGNED this 11th day of April, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE